# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>TROY D. RICKARD,<br><br>　　　　　　Defendant. | 8:15CR266<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Findings and Recommendation (Filing No. 26), issued by Magistrate Judge F.A. Gossett recommending that the Motion to Suppress filed by the Defendant Troy D. Rickard ("Defendant") (Filing No. 19), be denied. Defendant filed Objections to the Findings and Recommendation (Filing No. 31) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government has not responded to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

Defendant is charged with one count of conspiracy to distribute and/or possess with intent to distribute 50 grams or more of methamphetamine. (Indictment, Filing No. 1.) Defendant moves to suppress all evidence obtained from the execution of a search warrant and search and seizure of a residence on 1415 South 4th Street, Omaha, Douglas County, Nebraska (referred to in this Memorandum and Order as "1415"), and a warrantless search and seizure of property from a residence located at 1417 South 4th Street, Omaha, Douglas County, Nebraska (referred to in this Memorandum and Order as "1417"). Both searches and seizures occurred on or about the June 24, 2015.

Officer Robert Branch ("Officer Branch") with the Omaha Police Department ("OPD") submitted an Affidavit and Application for Issuance of a Search Warrant of 1415 (the "Affidavit") on June 19, 2015. (Government Exhibit ("GE") 8.) The Affidavit stated that within 48 hours of June 19, 2015, Officer Branch and another OPD officer met with a confidential informant ("CI") who told the officers that he/she had knowledge that Defendant and his girlfriend were involved in the distribution of methamphetamine. (GE 8 at 1.) The Affidavit describes the CI as "reliable." (GE 8 at 1, 2.) The Affidavit stated that, while working for Officer Branch, the CI had made multiple controlled buys which field-tested positive for methamphetamine. (GE 8 at 2.) Further, the Affidavit indicated that the CI provided reliable and accurate information to OPD officers leading to several narcotic search warrants and felony arrests. (GE 8 at 2.) When meeting with officers on June 19, 2015, the CI told officers that within the past 48 hours, the CI had been in the Defendant's residence at 1415 and observed Defendant's girlfriend sell a small amount of methamphetamine to an unknown person. (GE 8 at 1.) Officers independently verified that Defendant resided at 1415. (GE 8 at 2.) Based upon the representations in the Affidavit, a warrant issued for search of 1415.

At the evidentiary hearing on Defendant's Motion to Suppress, Officer Branch testified that he was involved in the application for and execution of the search warrant. (Tr. 6.) Between eight and ten officers with the swat team, wearing body armor with protective shields, used a battering ram to enter 1415. (Tr. 19.) After entry, police gave loud verbal instructions to the occupants, including Defendant. (Tr. 29.) The occupants of 1415 were moved outside to the front yard and OPD officers conducted a search of the residence. (Tr. 8.)

2

During the search of 1415, OPD officers found what was believed to be methamphetamine. (Tr. 8.) Once the supposed methamphetamine was found, Officer Branch arrested Defendant and took Defendant to a police cruiser to be interviewed. (Tr. 8.) Prior to the interview, Officer Branch read Defendant his Miranda rights and Defendant executed an OPD Rights Advisory form. (Tr. 8-9; GE 1.) Officer Branch testified that he made no threats nor did he give any promises of immunity. (Tr. 12-13.) Officer Branch told Defendant, however, that he wanted him to cooperate and that cooperation could be beneficial to Defendant. (Tr. 23.) During the interview, and after executing the Rights Advisory Form, Defendant made statements suggesting that 1417 contained methamphetamine and that he had keys to enter it and agreed to allow police to search 1417. (Tr. 14.) Officer Branch and Defendant went to that location and items of contraband were found. (Tr. 15.)

Defendant testified that he suffered a heart attack in April of 2015. (Tr. 34.) As a result, Defendant's physician instructed Defendant to limit his exposure to activities that caused anxiety or stress. (Tr. 35.) When the OPD officers executed the subject search warrant, Defendant heard a loud "boom" and saw armed officers with their weapons drawn and wearing body armor and using shields. (Tr. 37.) The Defendant testified that the officers were shouting orders and that he was placed on the floor and handcuffed behind his back. (Tr. 37.) The Defendant stated he was very nervous, scared, and concerned about his heart condition. (Tr. 38.) Defendant testified that his increased heart rate caused him, at some point, to ask an OPD officer if Defendant could be allowed to take his prescribed medication, though the record is unclear as to when this request was made. (Tr. 39.)

With respect to the search of 1415, the Magistrate Judge concluded that the search warrant was supported by probable cause, and even if it wasn't, the officer had sufficient reason to believe the warrant was valid. (Tr. 57.) The Magistrate further found that while Defendant was under arrest, he was read his *Miranda* rights. The Magistrate concluded that, based on the totality of the circumstances, Defendant voluntarily, knowingly, and intelligently waived his Miranda right to remain silent and gave consent to search 1417.[1] (Tr. 56.) The Magistrate reasoned that, although Defendant was nervous and felt anxious due to his heart condition, there was no evidence that Defendant did not understand his rights. (Tr. 56.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

The Fourth Amendment demands that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause. . . ." U.S. Const., amend. IV. Defendant argues that his Fourth Amendment rights were violated in several ways: First, he argues

---

[1] The Transcript of the evidentiary hearing reflects that the Magistrate Judge stated on the record that Defendant's custodial statements leading to the consent search of the address at 1415 were free, voluntarily, knowingly and intelligently given. (Tr. 56.) It appears clear from the context and the Magistrate's later statements that he was referring to 1417. (*See* Tr. 57.)

4

that the affidavit supporting the application for the search warrant failed to establish probable cause to search 1415. He contends that the good faith exception was not applicable to execution of the search warrant and, as a result, the subsequent search of 1417 was subject to the exclusionary rule. Second, Defendant argues that even if officers' entry into 1415 was lawful, Defendant did not give knowing, voluntary consent to search 1417. The Court considers these arguments in turn.

**I.      Four Corners of the Search Warrant**

Before a search warrant may be issued, the Fourth Amendment requires a showing of probable cause. *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). "Probable cause" is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In determining whether probable cause exists, a court must look at the totality of the circumstances. *See id.* at 230, 234. This determination is to be "based upon a common-sense reading of the entire affidavit," *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir.1982)), and any "reasonable inferences" drawn from the affidavit. *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008). The assessment of probable cause is made "from the viewpoint of a reasonably prudent police officer acting in the circumstances of the . . . case." *Seidel*, 677 F.3d at 337 (citing *United States v. Reinholz*, 245 F.3d 765, 776 (8th Cir. 2001)).

The Affidavit in this case was based primarily on information received from the CI. A probable cause determination may be based on information from a reliable confidential informant. *United States v. Webster*, 625 F.3d 439, 443 (8th Cir. 2010); *see*

5

*also United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998) ("The statements of a reliable confidential informant are themselves sufficient to support probable cause."). "Information from a confidential informant is reliable if the informant has a history of supplying reliable information or if the information provided by the informant is independently corroborated." *Id.* (quoting *United States v. Neal,* 528 F.3d 1069, 1073 (8th Cir. 2008)).

In this case, the CI told officers, including Officer Branch, that Defendant and his girlfriend were involved in the distribution of methamphetamine, and the CI had personally observed Defendant's girlfriend sell methamphetamine to an unknown person at the residence at 1415. (GE 8 at 1.) The CI had worked directly with Officer Branch on several occasions, and the CI demonstrated knowledge of how methamphetamine is packaged for sale. (GE 8 at 1, 2.) The Affidavit demonstrated that the CI had a history of providing reliable and accurate information that had successfully led to several narcotic search warrants and felony arrests. (GE 8 at 1, 2.) Considering the CI's history and personal observation of activity at 1415, a reasonably prudent officer would be justified in relying on the CI's information. *See Williams,* 10 F.3d 590 593 (8th Cir. 1993) ("Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence."); *Wright,* 145 F.3d at 974-75 (8th Cir.1998) ("The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information."). Accordingly, the Affidavit was supported by probable cause.

Defendant argues that despite the CI's reliability, the Affidavit failed to establish probable cause that additional methamphetamine would be found at 1415 and failed to provide any reliable, corroborated, non-hearsay facts connecting the Defendant to criminal activity. This argument fails because the CI provided information that Defendant and his girlfriend were involved in the distribution of methamphetamine. Given the CI's reliability and experience with distribution of methamphetamine, officers reasonably relied on this information. See *Williams*, 477 F.3d at 560 (stating that "[d]espite the lack of independent corroboration," probable cause existed where the judicial officer issuing the warrant knew a confidential informant had provided truthful and useful information and had made controlled drug purchases for the police department on several previous occasions). Further, the officers independently verified that Defendant resided at 1415. (GE 8 at 2.) The reliability of the CI demonstrated a fair probability that evidence of a crime would be found at 1415. Accordingly, the Magistrate did not err in concluding that the Affidavit was supported by probable cause.

## II. *Leon* "Good Faith" Exception

Even if the Affidavit was not supported by probable cause, law enforcement relied on the validity of the warrant in good faith. If probable cause is lacking, an exception to the exclusionary rule applies where officers rely on the warrant in good faith. *United States v. Hessman,* 369 F.3d 1016, 1019 (8th Cir. 2004). In *United States v. Leon,* 468 U.S. 897 (1984), the Supreme Court curtailed the use of the exclusionary rule as a remedy for unconstitutional searches, and noted that the stated purpose of the exclusionary rule is "to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916. "In the absence of an allegation that the magistrate

7

abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id. at* 920.

There is no allegation that the issuing judge wholly abandoned a detached and neutral role. Nor is there evidence that law enforcement officers were dishonest in preparing the Affidavit. Defendant essentially argues that the lack of probable cause in the Affidavit renders it dishonest and misleading. As already discussed, however, the four corners of the Affidavit show probable cause. The Affidavit demonstrates that Officer Branch relied on information from a CI who had a history of providing reliable information that had already led to several warrants and arrests. Thus, law enforcement acted in good-faith reliance on the warrant.

## III. Consent to Search 1417

Evidence found at 1417 need not be suppressed because Defendant knowingly and voluntarily consented to the search. "Statements and consent are involuntary where an individual's will is overborne by coercive police activity and he loses the capacity for self-determination." *United States v. Williams*, 760 F.3d 811, 815 (8th Cir. 2014). "When deciding whether statements are voluntary, we consider the totality of the circumstances." *Dowell v. Lincoln Cty., Mo.*, 762 F.3d 770, 775 (8th Cir. 2014). In *United States v. Chaidez,* 906 F.2d 377, 381 (8th Cir.1990), the Eighth Circuit held that to determine the voluntariness of a person's consent,

> courts should ask whether the person who consented: (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or
8

(6) either objected to the search or stood by silently while the search occurred.

*Chaidez,* 906 F.2d at 381 (citations omitted). The government bears the burden of proving "by a preponderance of the evidence that the defendant's statements were voluntary." *United States v. Brave Heart,* 397 F.3d 1035, 1040 (8th Cir. 2005).

In this case, although Defendant was in custody, in the back of a police cruiser at the time he gave consent to search 1417, there is no dispute that Defendant was read his *Miranda* rights. Further, there is no allegation that Defendant was threatened at the time Defendant gave consent, nor is there any allegation that he was questioned for an excessively long period of time. Defendant nevertheless argues that his consent to search 1417 was involuntary, because Officer Branch told Defendant that cooperating with police could be beneficial. The Court does not considers this to be evidence that Defendant's will was overborne so as to make his statements about 1417 involuntary. Although Officer Branch suggested that Defendant cooperate and told him that cooperation might benefit Defendant, there is no evidence that Officer Branch made any promises or guarantees. *See Rachlin v. United States,* 723 F.2d 1373, 1378 (8th Cir. 1983) (concluding there was no implied promise of leniency when agents communicated to defendant that it would be in his best interest to cooperate). Accordingly, there is no evidence that Defendant's statements were the result of police coercion, deception, or promises.

Defendant also argues that the police presence with the execution of the search warrant caused him fear, and anxiety about his heart condition. Defendant seems to imply that, due to his mental state, he could not have given voluntary consent. The

Supreme Court has stated that "a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). Nothing in the record suggests Defendant did not understand his Miranda rights, nor is there any evidence of coercion. Further, there is no evidence that Defendant's concern for his heart condition hindered his ability to understand his rights and voluntarily waive them. The credible evidence is that statements made by Defendant to law enforcement regarding 1417 were made freely, voluntarily and without compulsion or inducement of any sort.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 26), and the oral Findings and Recommendation following the evidentiary hearing (transcript at Filing No. 29), are adopted;

2. The Motion to Suppress (Filing No. 19) filed by Defendant Troy D. Rickard is denied; and

3. The Defendant's Objection to the Findings and Recommendation (Filing No. 31) is overruled.

Dated this 3rd day of March, 2016.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge